UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. __3:10cv-651-S__

*Filed Electronically*

ESTATE OF EZRA GERALD SMITH,
BY AND THROUGH THE ADMINISTRATRIX OF
HIS ESTATE, RENEE RICHARDSON, and
RENEE RICHARDSON, INDIVIDUALLY           PLAINTIFF

V.                    **COMPLAINT**

UNITED STATES OF AMERICA                 DEFENDANT

    SERVE:    The Honorable David J. Hale
United States Attorney
Western District of Kentucky
510 West Broadway, 10th Floor
Louisville, Kentucky 40202

The Honorable Eric H. Holder, Jr.
Attorney General of the United States of America
Department of Justice
Room B-103
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530-0001

\* \* \* \* \* \* \* \* \* \* \* \* \*

Come now the Plaintiffs, the Estate of Ezra Gerald Smith, by and through the Administratrix of his Estate, Renee Richardson, and Renee Richardson, individually, and for their Complaint and causes of action against the United States of America, state as follows:

**JURISDICTION**

1.    At all times relevant hereto, the decedent, Ezra Gerald Smith, by and through the Administratix of his Estate, Renee Richardson, was a resident of Louisville, Jefferson County, Kentucky.

2. At all times relevant hereto, Renee Richardson, is and was a resident of Louisville, Jefferson County, Kentucky. At the time of the incident which caused the death of her son, Renee Richardson and her deceased son were temporarily housed as family of an active member of the U.S. Armed Forces at Fort Bliss, El Paso, Texas. Despite being housed in Army-base housing in Fort Bliss, they remained at all times relevant hereto residents of Louisville, Jefferson County, Kentucky.

3. At all times relevant hereto, the Defendant, United States of America, did employ through the Department of the Army, certain mental health personnel and physicians at William Beaumont Army Medical Center (hereinafter "WBAMC") who provided or failed to provide care to Specialist Gerald Polanco, who has been charged with killing the decedent, Ezra Gerald Smith.

4. At all times relevant hereto, the Defendant, United States of America, did employ through the Department of the Army, certain military personnel and individuals in Spc. Polanco's chain of command as a Military Police Officer at Fort Bliss who failed in their duties owed to Spc. Polanco and their duties to the Army families and civilians, which such failures led to the death of the decedent, Ezra Gerald Smith.

5. That all claims in the above-styled action arise out of the shooting death of Louisville, Kentucky resident Ezra Gerald Smith on or about April 24, 2009 while walking to school on the property of Army supplied housing. Said death was caused by shots fired by Spc. Gerald Polanco, a Military Police Officer stationed at Fort Bliss, Texas.

6. That all claims are governed by the Federal Torts Claims Act, and as such this is an issue of subject matter jurisdiction which is exclusively the province of the United States District Courts.

7.     Pursuant to the Federal Torts Claims Act (28 U.S.C.A. Section 2675(a)), all administrative remedies have been exhausted, and the Department of the Army has sent a letter denying the claim dated September 30, 2010.  As such, this cause of action is ripe for adjudication.

8.     That the real party in interest is the United States of America, and pursuant to Federal Rule of Civil Procedure 4(i), its agent for service of process is the United States Attorney David J. Hale, United States Attorney for the Western District of Kentucky, 510 West Broadway, 10th Floor, Louisville, Kentucky 40202, and the Honorable Eric H. Holder, Jr., Attorney General of the United States of America, Department of Justice, Room B-103, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530-0001.

## CAUSES OF ACTION

## COUNT I:  MEDICAL NEGLIGENCE

9. Plaintiffs reassert, reallege, adopt and incorporate, each and every allegation previously asserted in numerical Paragraphs 1 through 8 of Plaintiffs' Complaint as if set forth herein.

10.    On or about April 24, 2009, the decedent, 18-year-old Ezra Gerald Smith, was walking to school when he was shot from behind and killed by a military policeman, Spc. Gerald Polanco.

11.    Spc. Polanco had previously served in combat, and was suffering from numerous psychiatric disorders that were either undiagnosed, improperly diagnosed or untreated or improperly treated by one or more medical providers with medical privileges at William Beaumont Army Medical Center in El Paso, Texas.

12. The mental health care providers knew or should have known of Spc. Polanco's severe and debilitating Post Traumatic Stress Disorder (hereinafter "PTSD"), and that such PTSD, when left untreated or improperly treated, was reasonably foreseeable to lead to the use of violence or psychotic outbursts by Spc. Polanco.

13. Spc. Polanco's impaired and dangerous condition was brought to the attention of numerous individuals employed by the Department of the Army, including but not limited to mental health care providers at WBAMC.

14. In the weeks prior to Spc. Polanco's foreseeable outburst and shooting of decedent, Spc. Polcanco's family had requested assistance from the Army through both the health care professionals and chain of command. Moreover, Spc. Polanco had been taken by his unit members against his will to "mental health" for medical care and psychiatric evaluation in the days preceding the incident. The health care professionals failed to comply with the standard of care in identifying his severe PTSD, and allowing him back into the population to kill the decedent.

15. Despite this notice and warning, the health care providers negligently, fragrantly, and wantonly failed to comply with the standard of care in treating Spc. Polanco, and as a result, Spc. Polanco shot and killed Ezra Gerald Smith.

16. The likelihood of Spc. Polanco's actions was foreseeable as was the risk to families living on base housing and civilians.

17. The health care providers knew or should have known of the risk of dangerous and psychotic behaviors and actions by post-battle military officers as identified through

4

numerous medical journal articles, Army created materials, Army required testing, press and media regarding other incidents, and many other sources.

18. Despite their general and continuing knowledge of the dangerous impact of PTSD following active duty, as well as their specific knowledge of the psychiatric impairment and dangerous propensities of Spc. Polanco, the Army-employed health care professionals negligently, wantonly, flagrantly and grossly ignored the known and/or foreseeable risks, deviated from the standards of care, and are therefore liable to the Plaintiffs for significant damages.

19. As a direct result of the Army-employed health care professionals' deviations from the standard of care, as well as their negligent, wanton, flagrant and gross behavior, the decedent, Ezra Gerald Smith, an 18-year-old boy on his way to the last few weeks of his Senior Year in High School, was shot and suffered pain and suffering, wrongful death, and impairment of his power to work and earn money, funeral and burial expenses, as well as the loss of enjoyment of his life, all in excess of the jurisdictional limits of this Court, for which the Defendant, the United States of America is liable.

20. The actions of the Defendant were so gross, reckless and wanton as to warrant an award of punitive damages.

### COUNT II: GROSS AND FLAGARANT NEGLIGENCE AND DISREGARD OF DEPARTMENT OF THE ARMY

21. Plaintiffs reassert, reallege, adopt and incorporate, each and every allegation previously asserted in numerical Paragraphs 1 through 20 of Plaintiffs' Complaint as if set forth herein.

22.     Given the chain of events preceding the shooting of Ezra Gerald Smith, Spc. Polanco's chain of command, specifically including but not limited to First Sergeant Beattie; Company Commander Captain Steward; Second Lieutenant Alexander Foster; Post Commander General Bromberg; were aware or should have been aware by the exercise of ordinary care of his extreme and dangerous risk of harm to the community at large, and flagrantly, wantonly and recklessly ignored such danger, and subjected the military families on the base and attached communities at Fort Bliss to severe personal injury or death.

23.     Spc. Polanco's chain of command knew or should have known and could have reasonably foreseen the risk Spc. Polanco posed to the military families and civilians of Fort Bliss, but wantonly, negligently, and recklessly failed to take action to prevent the death of the decedent, Ezra Gerald Smith.

24.     This wanton, negligent and reckless behavior by members of the military police resulted in the death of Ezra Gerald Smith.

25.     In the months prior to the shooting, Spc. Polanco went to the chaplain to get help, but the Chaplain's office declined.  In February, 2009, two months prior to the shootings, Spc. Polanco's wife complained to his commanding officer that he needed help.  Captain Stewart, his commanding officer, admitted that Spc. Polanco's wife came to him and said he needed help.

26.     Just prior to the week of the shooting, Spc. Polanco was considered AWOL for a period of time.  No action was taken on this charge of being Absent Without Leave.

27.     Prior to the shootings, he had not been showing up to work for a week.

28.     On the morning of April 24, 2009, several hours before his shooting spree, Spc. Polanco threatened his immediate supervisor with violence and death, and was negligently

6

permitted to leave mandatory military training, despite the direct threats of violence. No actions were taken to prevent Spc. Polanco from leaving and causing injury to others.

29. Despite the previous warnings by family and unit members, no efforts were made to remove weapons from the home of Spc. Polanco, nor to remove him from his position as an armed military police officer for the Department of the Army.

30. Upon returning to his home, Spc. Polanco, acting in the course and scope of his employment as a military police officer with the Department of the Army, opened fire on 18-year-old Ezra Gerald Smith, who was walking to school across the street from Spc. Polanco's Army issued base housing. Ezra Gerald Smith was shot in the back of the head, in sharp-shooter fashion as Spc. Polanco had been trained. Spc. Polanco then proceeded to open fire on other members of the base community, and asked for assistance in moving Ezra Gerald Smith's body.

31. Spc. Polanco's actions were proximately caused by the gross and severe negligence of numerous members of the Armed Forces, as set forth above, and as yet undetermined physicians working at William Beaumont Army Medical Center. But for their negligence, carelessness, wanton disregard, and recklessness, Spc. Polanco would not have been capable of killing the decedent. All of Spc. Polanco's actions were reasonably foreseeable had the Department of the Army followed its own policies and procedures for handling and treating post-active-duty officers with PTSD. Thus, their negligence was a direct and proximate cause of the death of Ezra Gerald Smith.

32. That as a direct result of the negligence of the Defendants, as members of the Department of the Army, the United States of America, the Plaintiff, Ezra Gerald Smith, suffered pain and suffering, wrongful death, funeral and burial expenses and impairment of his power to work and earn money, as well as the loss of enjoyment of his life, all in excess of the

jurisdictional limits of this Court, for which the Defendant, the United States of America is liable.

33.     The actions of the Defendant were so gross, reckless and wanton as to warrant an award of punitive damages.

### COUNT III.  LOSS OF CONSORTIUM AND PAIN AND SUFFERING OF RENEE RICHARDSON, MOTHER OF DECEDENT EZRA GERALD SMITH

34.     Plaintiffs reassert, reallege, adopt and incorporate, each and every allegation previously asserted in numerical Paragraphs 1 through 33 of Plaintiffs' Complaint as if set forth herein.

35.     As a direct result of the afore-mentioned negligence, Renee Richardson, as mother of Ezra Gerald Smith, has suffered loss of consortium of her dependent child, including but not limited to loss of companionship, love and all other such permissible damages.  She has lost the joy of watching her son, who had already been accepted to Kentucky State University, graduate college, get a job, get married and have children of his own.

36.     The actions of the Defendant were so gross, reckless and wanton as to warrant an award of punitive damages.

37.     All of these injuries suffered by Renee Richardson were as a direct and/or proximate result of the foreseeable negligence of the United States of America, and for which she is entitled to compensation in the amount of $3,000,000.00

**WHEREFORE**, Plaintiffs respectfully request an award for all available compensatory, punitive and other damages against the Defendant, evaluated at $8,750,000.00, as follows:

     1.     For an award for the Estate of Ezra Gerald Smith for all compensatory, punitive, exemplary and all other available damages as the Defendant, evaluated as $5,750,000.00;

     2.     For an award for Renee Richardson, individually, as mother of the decedent, for all compensatory, punitive, exemplary and all other available damages as the Defendant, evaluated as $3,000,000.00;

     3.     For their costs herein expended;

     4.     For a trial by jury;

     5.     For any and all reasonable damages to which they may reasonably be entitled.

Respectfully submitted,

*/s/ Sheila P. Hiestand*
SHEILA P. HIESTAND
BUBALO HIESTAND & ROTMAN, PLC
9300 Shelbyville Road, Suite 215
Louisville, KY 40222
(502) 753-1600
***Attorney for Plaintiff***