UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ESTATE OF EZRA GERALD SMITH, by and
through the administratrix of his estate, Renee
Richardson, and RENEE RICHARDSON, individually                     PLAINTIFFS

v.                                                  CIVIL ACTION NO. 3:10-CV-00651-CRS

UNITED STATES OF AMERICA                                           DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, United States of America, to dismiss the Complaint (DN 12) and motion of the defendant to dismiss the Complaint pursuant to the discretionary function exception (DN 18).

This matter arose from a tragic accident that occurred as 18 year old Ezra Gerald Smith was walking to school within a U.S. Army housing community when he was shot and killed by Spc. Gerald Polanco. Complaint, ¶ 5. Plaintiff, Renee Richardson, has filed suit as administratrix of Smith's estate and in her individual capacity under the Federal Torts Claim Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), alleging wrongful death and loss of consortium on theories that U.S. government personnel negligently diagnosed and treated Spc. Polanco and negligently failed to supervise and control him.

When a motion to dismiss is made, the court must accept the well-pleaded facts of the complaint as true and construe the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Directv, Inc. V. Treesh*, 487 F.3d 471, 476 (6th Cir.

2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).[1] The complaint may be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Morgan*, 829 F.2d at 12.

Plaintiffs, residents of Louisville, Kentucky were temporarily housed as a family of an active member of the U.S. Armed Forces at Fort Bliss, El Paso, Texas at the time of the incident. Complaint ¶ 2. Spc. Planco was a member of the U.S. Army as a Military Police Officer at Fort Bliss at the time he shot and killed Smith. Complaint ¶ 10. Spc. Polanco previously served in combat and was suffering from numerous psychiatric disorders that were being treated by medical providers at William Beaumont Army Medical Center in El Paso, Texas. Complaint ¶ 11. In the weeks leading up to the shooting, Spc. Polanco's family requested assistance from Army health care professionals and officers in Spc. Polanco's chain of command. Complaint ¶ 14. Spc. Polanco received medical care and a psychiatric evaluation days before the shooting. Complaint ¶ 14. On the day of the shooting, Spc. Polanco was permitted to leave military training. Complaint ¶ 28. He retrieved a weapon from his home, shot Smith and proceeded to open fire on other members of the base community. Complaint ¶¶ 29, 30.

Plaintiffs allege that Spc. Polanco's actions were reasonably foreseeable and proximately caused by the "gross and severe negligence" of numerous members of the Armed Forces and physicians working at William Beaumont Army Medical Center. Complaint ¶ 31. Plaintiffs claim that Army physicians were medically negligent in failing to diagnose, improperly diagnosing, or failing to treat or improperly treating Spc. Polanco's psychiatric disorders. Complaint ¶ 11. Further,

---

[1] Plaintiffs assert that defendant introduced additional facts outside the pleadings, converting the motion to dismiss to a motion for summary judgment, pursuant to Fed.R.Civ.P. 56. However, defendant has not asserted any facts outside the pleadings. Accordingly, the motion to dismiss standard controls.

plaintiffs claim that Spc. Polanco's chain of command was negligent in failing to exercise ordinary care and be aware "of [Spc. Polanco's] extreme and dangerous risk of harm to the community at large...and subjected the military families on the base and attached communities at Fort Bliss to severe personal injury or death." Complaint ¶ 22.

Defendant seeks dismissal of the complaint on the grounds that plaintiffs cannot assert a cognizable medical malpractice claim under applicable law and sovereign immunity. Plaintiffs assert their claim under the FTCA, which provides a limited waiver of the federal government's sovereign immunity, granting federal courts exclusive jurisdiction over tort claims where "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, plaintiffs must be able to state a claim under the law of the state in which the alleged negligent or wrongful conduct took place, which in this case is Texas. *See Myers v. United States,* 17 F.3d 890, 898-99 (6th Cir. 1994); *Richards v. United States*, 369 U.S. 1, 10, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962).

Plaintiffs contend in Count I of the complaint that the United States is liable to plaintiffs because Army health care providers were negligent in their treatment of Spc. Polanco. Complaint ¶ 15. However, Texas law is clear that "no duty runs from a psychologist to a third party to not negligently misdiagnose a patient's condition." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).[2] The Texas Supreme Court stated definitively in *Thapar* that a medical professional "owes

---

[2]Plaintiff cites to *Wilson v. Brister*, 982 S.W.2d 42 (Tex. App. 1998), for the proposition that a cause of action against the treating mental health care professional exists where his patient's criminal conduct is foreseeable prior to his actions. However, in *Wilson*, the action was based on a failure by the doctor to adequately treat the doctor's own patient who later committed suicide. *Id*. at 43. *Wilson* is thus inapplicable to the case at hand, where plaintiffs are third party nonpatients asserting a failure to adequately treat a patient and prevent that patient's criminal conduct directed at a third party.

no duty to [plaintiff], a third party nonpatient, for negligent misdiagnosis or negligent treatment." *Id*. at 638. Further, the *Thapar* court refused to adopt the seminal case of *Tarasoff v. Regents of University of California*, which recognized a mental-health professional's duty to warn nonpatient third parties of a patient's threats. *Id*. The court stated, "[W]e decline to adopt a duty to warn now because the confidentiality statute governing mental-health professionals in Texas makes it unwise to recognize such [sic] common-law duty." *Id*. Plaintiffs assert *Thapar* recognized that the Texas confidentiality statute provides mental health professionals with discretion as to whether confidential information should be disclosed, and thus the question in this case should be whether or not the decision of the mental health care professional was in fact a negligent decision. However, the *Thapar* court held that it was this very discretion in the Texas statute that evidenced legislative intent to make confidential disclosures permissive. *Id*. at 639. Thus, "[i]mposing a legal duty to warn third parties of patient's threats would conflict with the scheme adopted by the Legislature by making disclosure of such threats mandatory." *Id*.

Plaintiffs' medical negligence claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) as no duty can be established to support a negligence claim under the applicable Texas state law and "[u]nless the plaintiffs have pled facts sufficient to justify liability under ordinary state-law principles, and thus invoked the court's subject matter jurisdiction under the general waiver of sovereign immunity in 28 U.S.C. § 2674, there is no need to resort to the exceptions in 28 U.S.C. § 2680 to dismiss the suit." *Myers,* 17 F.3d at 898-99.

Plaintiffs' claim of negligence by the Department of the Army in Count II of the complaint must also be dismissed because it is barred by sovereign immunity under the assault and battery exception and the discretionary function exception of the Federal Torts Claim Act. 28 U.S.C. §§

1346(h) and 1346(a). It is well settled that the United States is immune from suit unless an express waiver to sovereign immunity is provided, and the terms of this consent to be sued defines the court's jurisdiction to hear the suit. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Further, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981) (quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d. 306 (1957)). Congress adopted the FTCA as a limited waiver of the United States' sovereign immunity and included significant exceptions to this waiver in 28 U.S.C. § 2680.

The assault and battery exception provided in 28 U.S.C. § 2680(h) states that any claim "arising out of" assault or battery are not included in the sovereign immunity waiver of the FTCA. In considering this assault and battery exception in the case of *United States v. Shearer*, Justice Burger stated:

> Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee. Thus the express words of the statute bar respondent's claims against the Government.

473 U.S. 52, 55, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (emphasis in original). While this reasoning was not joined by a majority of the Supreme Court,[3] the Sixth Circuit adopted it in *Satterfield v. United States*, 788 F.2d 395 (6th Cir. 1986). In *Satterfield*, three off-duty servicemen beat another

---

[3] Justices Brennan, Blackmun, Stevens and Marshall declined to join in this portion of the opinion, instead relying solely on the *Feres* doctrine to reverse the decision of the Third Circuit; and Justice Powell did not participate in the decision.

soldier to death and his estate sued, alleging that Army supervisory personnel negligently failed to control the servicemen after previous threats and physical assaults against the decedent were brought to their attention. The Sixth Circuit relied on Justice Burger's language from *Shearer* in holding that "[b]ecause plaintiff's complaint set forth an intentional tort claim merely sounding in negligence, such claim falls within the exception in § 2680(h), and was therefore properly dismissed." *Id.* at 400 (also citing *Garcia v. United States*, 776 F.2d 116, 118 (5th Cir. 1985)); *See also Brooks v. Silva*, 2010 WL 2595984 (E.D. Ky. June 24, 2010) (citing *Shearer* and *Satterfield* to support its holding that a plaintiff cannot avoid the assault and battery exception by recasting the complaint in terms of negligent failure to prevent). Therefore, under Sixth Circuit precedent, plaintiffs' negligence claim, which ultimately stems from the assault and battery committed by Spc. Polanco, is barred by this exception to the FTCA.

Further, the FTCA waiver of sovereign immunity also includes an exception for discretionary functions which precludes the imposition of liability for conduct "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "If a case falls within this statutory exception to FTCA § 1346(b), the court lacks subject matter jurisdiction." *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997).

Application of the discretionary function exception of the FTCA requires a two-step analysis. *See United States v. Gaubert*, 499 U.S. 315, 322-24, 111 S.Ct.1267, 1273-75, 113 L.Ed.2d 335 (1994); *Berkovitz v. United states*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d. 531 (1988); *Myers*, 17 F.3d at 895. First, the exception applies only to "acts that are discretionary in

nature, acts that involve an element of judgment or choice." *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958). Second, the "judgment must be of the kind that the discretionary function exception was designed to shield," "[b]ecause the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 322-23.

Plaintiffs assert that the Department of the Army has "numerous regulations and orders in place" that regulate supervising or disciplining servicemen who disobey orders or who are considered Absent Without Leave. However, plaintiffs do not point to any specific applicable regulations which removed discretion from Spc. Polanco's chain of command. The burden of proof is not with the defendant to show the applicability of the discretionary function exception, because this would "misapprehend the effect of § 2680." *Carlyle v. United States*, 674 F.2d 554, 556 (6th Cir. 1982). Instead, "[i]t is a universal rule...that a party who invokes the jurisdiction of a federal court must allege all facts necessary to give the court jurisdiction of the subject matter." *Id.*; *See also Prescott v. United States*, 973 F.2d 696, 702 & n. 4 (9th Cir. 1992) (adopting the framework of the Sixth Circuit in *Carlyle* and holding it consistent with the Supreme Court's subsequent discretionary function exception analysis in *Gaubert*, which did not deal with the burden of proof issue).

Policy concerns are also inherent in the decisions made by Spc. Polanco's chain of command in their supervision of him. It is "the nature of the actions taken and whether they are susceptible to policy analysis," not the "subjective intent in exercising the discretion" and whether a conscious balancing of risks and advantages took place that is determinative. *Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275; *see also Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997). "[D]eciding

how to restrain a soldier is inherently policy laden." *Malone v. United States*, 61 F.Supp.2d 1372, 1379-80 (S.D. G.A. 1999) (quoting *Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998)); *see also Satterfield*, 788 F.2d at 398 ("civilian courts are counseled not to question basic choices about discipline, supervision, and control of a serviceman") (quoting *Shearer*, 105 S.Ct. at 3043). In *Malone*, a U.S. Army soldier was facing rape charges and the Court held that decisions of military personnel regarding the soldier's supervision and control were protected by the discretionary function exception, because the policy issues involved were "exactly the type of policy judgments that the discretionary function is designed to shield." *Id*. Judicial second guessing of policy considerations by military personnel in supervising Spc. Polanco fall within the ambit of what the discretionary function exception was intended to prevent. Therefore, plaintiffs' Count II claim of negligent supervision by the Department of Army must also be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), because it falls within the discretionary function exception to the Federal Torts Claim Act.

      An order consistent with this opinion will be entered this date.

September 1, 2011

**Charles R. Simpson III, Judge**
**United States District Court**